UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Megann Lucaj and Victor Lucaj

      Plaintiffs,

v.                              Case No.: 11-11809

City of Taylor, *et al.*,            Honorable Sean F. Cox

      Defendants.

_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Megann and Victor Lucaj ("Plaintiffs") filed this § 1983 action against the City of Taylor (the "City") and police officers Meggan Kantz, Gina Starzec, Kristina Corne,[1] and Anthony Chicko ("Defendant Officers"), after Defendants executed a warrant to search Plaintiffs' home.[2] The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on May 31, 2012.

For the reasons stated below, the Court shall GRANT IN PART and DENY IN PART Defendants' motion. Defendants' motion is GRANTED as to all Plaintiffs' claims, with the exception of Plaintiffs' Fourth Amendment Claim relating specifically to Officer Corne's and

---

[1]Defendant Kristina Corne is improperly named Christine Corne in Plaintiffs' pleadings.

[2]Plaintiffs also originally named officers William Plemons, Richard Troup, and Daniel Pizana as defendants in this action. Those officers have been voluntarily dismissed from this action. (See Doc. Entry Nos. 14, 18, and 23).

1

Officer Starzec's unreasonable continued search of Plaintiffs' home.

## BACKGROUND

Plaintiffs filed their Amended Complaint in Wayne County Circuit Court on March 31, 2012.  Defendants removed this action to this Court on April 25, 2011.  (Doc. Entry No. 1). Plaintiffs' Amended Complaint asserts eight counts: Count 1 – False Arrest and Imprisonment (Defendant Officers); Count 2 – Gross Negligence (Defendant Officers); Count 3 – Assault and Battery (Defendant Officers); Count 4 – Intentional Infliction of Emotional Distress (Defendant Officers); Count 5 – False Arrest/False Imprisonment and Continued Detention Without Probable Cause (Fourth Amendment Violation) (Defendant Officers); Count 6 – Excessive Force (Fourth and Fourteenth Amendment Violation) (Defendant Officers); Count 7 – 42 U.S.C. § 1983 Monell Claim (Fourteenth Amendment) (Defendant City of Taylor); and Count 8 – Loss of Consortium.

Following the close of discovery, Defendants filed the instant Motion for Summary Judgment on February 23, 2012. (Doc. Entry No. 28).  Both parties complied with the Court's practice guidelines for motions for summary judgment such that: (1) along with Defendant's Motion for Summary Judgment, Defendants filed a "Statement of Material Facts Not In Dispute" ("Def. Stmt."); and (2) along with Plaintiffs' Response, Plaintiffs filed their "Counter Statement of Disputed Facts" ("Pl. Stmt.").

The following reflects the evidence submitted by the parties, taken in the light most favorable to Plaintiffs:

At the time of the incident that gave rise to this action, Plaintiffs Megann and Victor Lucaj, a married couple, resided at 9012 Continental in Taylor, Michigan.  (Pl. Stmt. at 1).

2

Defendant Officers are police officers employed with the City of Taylor and Officer Meggan Kantz was assigned to the Downriver Area Narcotics Organization ("DRANO"), a multi-jurisdictional drug enforcement agency. (Def. Stmt. at 1). Other members of DRANO included Officer DeWeese of the Woodhaven Police Department, Officer Troup of the Melvindale Police Department, and Detective Plemons of the Riverview Police Department.

On April 19, 2009, Victor Lucaj was mowing the lawn of his backyard when he discovered three marijuana plants in pots tucked behind trees along the property line of his property and the neighbors' property. (M. Lucaj Dep. at 122). The marijuana plants were on the Plaintiffs' side of the property line. (*Id*.). Mr. Lucaj then called his wife, who was running errands near City Hall, and told her to go to the Taylor Police Department and file a police report. (*Id*. at 123). Once inside the police department, Mrs. Lucaj allowed her husband to speak by phone to a police officer. Mr. Lucaj notified the police officer that he had discovered marijuana plants along their property line, explained that the plants were not theirs, and requested that police officers come to their house and remove them. (*Id*. at 124).

At approximately 6:30 p.m., Officer Jeffrey Shewchuk issued a Call for Service regarding the marijuana plants at the Lucaj residence. (Pl. Resp., Ex. K). Officer Shewchuk categorized the Call for Service as a health and safety violation. (*Id*.). The Call for Service named the Complainant as "Victor," and listed his address as 9012 Continental Dr.. (*Id*.). It also read, "Caller located suspected marijuana (potted) plants in his back yard. Please park a few houses away. He fears retaliation." (*Id*.).

Officer Gina Starzec received the Call for Service on her computer, improperly categorized the Call for Service as a narcotics investigation rather than a health and safety

violation, and inquired as to whether a Taylor Special Operations officer was available to make

the run. (Starzec Dep. at 90). After determining that no Special Operations officers were

available to make the run, Officer Starzec left a voicemail on Officer Kantz's personal cell phone

at approximately 10:22 p.m.. In the voicemail, which was saved on Officer Kantz's cellular

phone, Officer Starzec mistakenly identified the Plaintiffs' neighbors as the complaining party,

rather than the Plaintiffs themselves, stating:

> At 9012 Continental, 9012 Continental, that is in Labana Woods,
> Labana Woods at (inaudible) in the backyard of that residence there
> is potted weed plants growing in pots and the neighbor wants
> something done about it. There was a run put in for it. I'm passing
> it on to you. I am clearing out this run.

(Kantz Garrity Interview at 5:55, Ex. F). That evening, no one from the Taylor Police

Department came to Plaintiffs' residence to remove the marijuana plants.

The next morning, on April 20, 2009, Mrs. Lucaj spoke to her brother, Aaron Burke,

about the marijuana plants her husband discovered the day before. (M. Lucaj Dep. at 151). Mr.

Burke called his friend at the Taylor Police Department, Officer Don Farago, who then relayed

the information to Sgt. Tony Neal of the Taylor Special Operations Unit. (*Id.*).

At around 4:00 p.m. on April 20, 2009, Officer Kantz and Detective Plemons went to a

house on Mary Street, which is adjacent to Plaintiffs' house, and saw two pots containing several

marijuana plants tucked behind the tree line in Plaintiffs' backyard. (Kantz Dep. at 121-123).

After seeing the marijuana plants in Plaintiffs' backyard, Officer Kantz prepared an

affidavit for a search warrant for 9012 Continental – the Plaintiffs' residence. (Search Warrant,

Def. Br, Ex. M). In preparing the search warrant affidavit, Officer Kantz did not check Taylor

Police Department in-house records, as required by Taylor Police Department policy. (Kantz

4

Dep. at 127). Officer Kantz also did not review the Call for Service report relayed to her by

Officer Starzec. (*Id*. at 95). Furthermore, Officer Kantz did not conduct an address query

through the Taylor Police Department computer system, which would have revealed that

Plaintiffs' complaint to the police department was merely a Call for Service. (Chicko Dep. at

33). Officer Kantz's search warrant affidavit states, "Further, on 08/19/09 Officer Starzec from

Taylor PD informed affiant they received a tip at the above address that they were growing

marijuana in pots in their backyard. The tip was phoned in from an anonymous neighbor."

(Search Warrant/Affidavit, Def. Br., Ex. M). The search warrant was signed by a judge and

issued at about 7:30 p.m. on August 20, 2009. (*Id*.).

Shortly before the judge issued the search warrant, Mr. Lucaj had a telephone

conversation with Sgt. Neal. (Neal Dep. at 8). During that call, Sgt. Neal notified Plaintiffs that

he and Sgt. Jim Martin were coming over to Plaintiffs' house to recover the marijuana plants.

(*Id*. at 6-8). Dressed in their plain clothes, Sgt. Neal and Sgt. Martin arrived at Plaintiffs'

residence at about 7:30 p.m.. At this point, only two of the three marijuana plants remained. (*Id*.

at 7). After asking Plaintiffs some background questions about how they discovered the

marijuana plants, they loaded the two marijuana plants into an undercover police car and

transported them back to the police department. (*Id*. at 7-9). Sgt. Neal then drafted a police

report and logged the marijuana plants into evidence. (*Id.*).

At 8:30 p.m., Officer Kantz faxed a Deconfliction Form to HIDTA, which is used to

prevent conflicts with other police agencies. The Deconfliction Form indicated that DRANO

would be executing a search warrant at 9012 Continental at 8:30 p.m.. (HIDTA Form, Def. Br.,

Ex. P). Officer Kantz did not, however, directly notify the Taylor Special Operations

Department that DRANO was planning to execute the search warrant.  (Helvey Dep. at 44).

Prior to the execution of the search warrant, DRANO officers conducted a briefing and requested the assistance of other Taylor Police Department officers.  Upon arrival at 9012 Continental, Lt. Pizana, who was the DRANO team leader for the day, did not see the plants in the backyard.  (Kantz Dep. at 134).  He then spoke to a neighbor on Mary Street who stated that she had seen two men take the marijuana plants into the house located at 9012 Continental.  (*Id*.).

The DRANO team knocked on Plaintiffs' door and announced their presence.  (*Id*. at 136-138).  While the DRANO team was knocking and shouting, Mrs. Lucaj was in the bathroom and could not immediately open the door.  (M. Lucaj Dep. at 91, 160-75).  Mrs. Lucaj heard three loud knocks, and then a loud "boom" as the DRANO team forced entry into Plaintiffs' home.  (*Id*. at 161-162).  Defendant Officers Starzec, Chicko, and Corne did not enter the house during the forced entry.

Mrs. Lucaj exited the bathroom on the second floor and walked toward the stairwell as the officers were shouting for her to put her hands up.  (*Id*.).  While Mrs. Lucaj was standing on the second floor landing, one of the officers pushed her to the ground, put a knee on her back, and frisked her.  (*Id*. at 164).  Mrs. Lucaj observed that some of the officers were wearing masks. During this time, Mrs. Lucaj was asking the officers who they were, and stating that Taylor police officers had already been to her home.  (*Id*. at 166).  One officer pointed his gun at her, instructed her to sit against the wall, and then walked her downstairs.  (*Id*. at 169-171).

Once escorted to the living room, Mrs. Lucaj again told the officer that Taylor police officers had already been to her home and that the officer gave his business card to her husband. (*Id*. at 109-110).  Mrs. Lucaj called her husband, who described his wife as being "hysterical and

incoherent," and had him speak to Lt. Pizana. (V. Lucaj Dep. at 63). Mr. Lucaj explained to Lt. Pizana that Sgt. Neal's business card was on their bedroom night stand. (*Id.*).

The officers guided Mrs. Lucaj into her bedroom, retrieved the business card and escorted Mrs. Lucaj back into the living room. (M. Lucaj Dep. at 174). While some of the officers looked at the business card, an officer guarded Mrs. Lucaj with his gun drawn. (*Id.*). Officer Kantz called Sgt. Neal, who notified her that he had been at Plaintiffs' residence just thirty minutes prior and had removed the marijuana plants from Plaintiffs' property. (Kantz Dep. at 142-148).

While Officer Kantz was speaking over the phone with Sgt. Neal, Officer Corne and Officer Starzec conducted a K-9 sweep of the premises. (Corne Dep. at 34). After Officer Kantz concluded her phone conversation with Sgt. Neal, Mrs. Lucaj testified that Officer Corne asked her where the Plaintiffs' cat was. (M. Lucaj Dep. at 176). Mrs. Lucaj stated that the cat was probably under the bed covers in Plaintiffs' bedroom. One of the officers then took Mrs. Lucaj by the arm into the master bedroom. (*Id.* at 176-77). Mrs. Lucaj grabbed the cat and the officer told her to put the cat in the master bathroom. (*Id.* at 177). Mrs. Lucaj put her cat in the bathroom and shut the door. (*Id.*). The officer then escorted Mrs. Lucaj back to the living room. (*Id.*). Mrs. Lucaj testified that the K-9 sweep continued even after Officer Kantz completed her phone conversation with Sgt. Neal. She stated:

> A:   The next thing I remember is the dog coming in. I remember seeing the dog, it was like right in front of me.
>
> * * *
>
> A:   So then I remember seeing a dog. I don't know who was with the dog. But I remember seeing the dog walk down the basement stairs 'cause it was like – has to pass in front of where I was sitting.
>
> Q:   And how long were you sitting on the ottoman before you

7

saw them walking down the stairs, if you remember, the
second time?

A:     A few moments after they had me come and sit down.

Q:     Okay. So, what happens next?

A:     I remember the dog smelling me. And from my viewpoint, I
didn't really see the dog search the whole house. But I could
see the dog enter the master bedroom. And from where I was
sitting, I could see the master bathroom door. And I saw a
uniformed Taylor Police officer kick in my bathroom door.

(*Id.* at 177-79).

The officers then took Mrs. Lucaj's picture as she sat in the living room. (*Id*. at 179).

The officers escorted Mrs. Lucaj into the kitchen and told her that they needed to take a piece of

her husband's mail for identification purposes. The officers then began leaving the house

through the garage and Mrs. Lucaj asked if the officers were going to leave without fixing her

door. (*Id*. at 190-91). Because the door would not close after the forced entry, the officers

suggested blocking the door with a piece of furniture. (*Id*. at 181). Mrs. Lucaj asked the officers

to move a chest against the door because she could not move it herself. (*Id*.). As the officers left

her home, Mrs. Lucaj walked out of her house through her garage and saw many of her

neighbors standing outside.

On August 21, 2009, Commander Don Helvey of the Taylor Police Department initiated

an investigation into Plaintiffs' complaint with the Taylor Police Department. (Helvey Dep. at

71-79). Officers Gina Starzec and Meggan Kantz were the subjects of a Commander's Hearing.

The Commander concluded that Officer Starzec violated Taylor Police Department's Standards

of Conduct and Procedure #10 – Any inefficiency and/or incompetency exhibited by an officer

to perform the duties of his or her office. (Commander's Report, Pl. Br., Ex. O). Commander

Helvey determined:

8

> Cpl. Starzec inaccurately informed Kantz that a neighbor called on marijuana plants growing at 9012 Continental Dr..  A complete reading of the information would have made it clear that 9012 Continental Dr. was the caller and not the defendant.  Based on this information, Cpl. Kantz obtained a search warrant for the caller's address and executed it on 8-20-09.

(*Id.*).  Officer Starzec's punishment consisted of two days off work without pay.  (*Id.*)

Officer Kantz was given a written reprimand for a violation of Standards of Conduct and Procedure #10.  Commander Helvey determined:

> On August 19, 2009, Cpl. Kantz was given information by Cpl. Starzec that a neighbor was complaining of marijuana plants growing in the backyard of 9012 Continental Dr..  This information was inaccurate as the caller actually resided at 9012 Continental Dr..  Cpl. Kantz was advised that this information came from a call for service. Cpl. Kantz made no attempt to verify this information.  Cpl. Kantz also made no attempt to advise the Taylor Police Department Special Operations Bureau that she was preparing a search warrant for the location.  The Special Operations Bureau was never notified that a search warrant was to be and was in fact executed on August 20, 2009.  The search warrant was executed on the caller's address.

(*Id.*).  The only punishment indicated on Commander Helvey's report regarding Officer Kantz is the written reprimand.  (*Id.*).

## LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56 (c).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*

9

*v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

I.    Are the Defendant Officers Entitled to Qualified Immunity?

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Id.*; *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation.  *Dominguez*, 555 F.3d at 549.  The Court may consider these inquiries in either order.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[A] qualified immunity defense can be raised at various stages of the litigation including

10

at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

Here, Defendants have raised the issue in the instant Motion for Summary Judgment, filed after the close of discovery. Plaintiffs have alleged two different Constitutional Violations: 1) false arrest and imprisonment; and 2) excessive force during the search process. The Court will analyze each claim separately.

Plaintiffs' Amended Complaint and response brief do not detail the conduct of each Defendant Officer with respect to many of the claims alleged. Rather, Plaintiffs' often attribute the actions of one officer to all of the Defendant officers. The Sixth Circuit has stated that "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). The Court has addressed each Defendant Officer's individual actions where applicable.

    A.    <u>Plaintiffs' False Arrest/False Imprisonment Claims:</u>

        i.    <u>Viewing the Facts in the Light Most Favorable to Plaintiffs, Have Plaintiffs Established A Constitutional Violation as to Any of the Defendant Officers?</u>

At the heart of Plaintiffs' claims is whether the search warrant executed for Plaintiffs' home was supported by probable cause. "The Fourth Amendment mandates that a search warrant may only be issued upon a showing of probable cause." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id*. Thus, "a magistrate need only find 'reasonable grounds for belief' that evidence will be found in order to justify the issuance of a search warrant. *Id*. "[R]eviewing courts are to accord the magistrate's

determination 'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

"When an affidavit is the basis for a probable cause determination, the affidavit 'must provide

the magistrate with a substantial basis for determining the existence of probable cause.'"

*Thomas,* 605 F.3d at 307.

Generally, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense

to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983."

*Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).  Moreover, the seizure of an

occupant of a home being searched pursuant to a valid search warrant is constitutional because

the search warrant provides a reasonable basis for police officers to determine that the occupant

is engaged in criminal activity.  *Michigan v. Summers*, 452 U.S. 692, 701-04 (1981) ("We have

already noted that the detention represents only an incremental intrusion on personal liberty

when the search of a home has been authorized by a valid warrant.").

"[P]robable cause to arrest and prosecute is based on the facts and circumstances within

the officer's knowledge that are sufficient to warrant a prudent person. . . in believing. . . that the

suspect has committed, is committing, or is about to commit an offense."  *Hinchman v. Moore*,

312 F.3d 198, 204 (6th Cir. 2002) (internal quotations omitted).  "Only where the warrant

application is so lacking in indicia of probable cause as to render official belief in its existence

unreasonable will the shield of immunity be lost."  *Malley v. Briggs*, 475 U.S. 335, 344 (1986)

(internal citations omitted).  An officer "will not be immune if, on an objective basis, it is

obvious that no reasonably competent officer would have concluded that a warrant should issue;

but if officers of reasonable competence could disagree on this issue, immunity should be

recognized."  *Id*. at 341.  The Sixth Circuit has held that "an officer [or investigator] cannot rely

12

on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989); *see also Kuehl v. Burtis*, 173 F.3d 646, 651 (8th Cir. 1999).

With respect to Plaintiffs' false arrest and illegal search and seizure claim, the only individual officers who Plaintiffs have identified as taking potentially illegal actions are Officers Starzec, Kantz, and Corne.

Plaintiffs first assert that Mrs. Lucaj's detention during the execution of the search warrant violated her Fourth Amendment rights because the search warrant was not supported by probable cause. Plaintiffs base this argument on the fact that Officer Kantz's search warrant affidavit contained false statements or material omissions. Despite the mistakes made by Officers Starzec and Kantz, Defendants insist that the search warrant was still supported by probable cause because the Defendant Officers relied on a judicially secured warrant in good faith.

When basing a Fourth Amendment claim on false statements made by an officer in obtaining a search warrant, a Plaintiff is "required to prove by a preponderance of the evidence that in order to procure the warrant, [the officer] knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (internal quotations omitted). "To show this violation, the conduct of the public officials must rise beyond the level of mere negligence." *Yancey*, 876 F.2d at 1242.

Plaintiffs direct the Court to the statement in Officer Kantz's affidavit that states, "Further, on 08/19/09 Officer Starzec from Taylor PD informed affiant they received a tip at the above address that they were growing marijuana in pots in their back yard. The tip was phoned in from an anonymous neighbor." (Search Warrant/Affidavit, Def. Br., Ex. M). The parties do not dispute that the "tip" the officers received was not anonymous, and that the Call for Service never stated that the residents of the address identified (Plaintiffs' address) were the parties growing the marijuana plants.

Defendants admit that Officer Starzec misread the Call for Service that she received on August 19, 2009. (Defs' Resp. at 2). There is also no genuine issue of fact that Officer Starzec incorrectly relayed to Officer Kantz that a neighbor complained of the marijuana plants on the Plaintiffs' property, and not that it was the Plaintiffs themselves who made the complaint. (Commander's Report, Pls' Br., Ex. O). Officer Kantz included this information in her search warrant affidavit, and, not knowing the identification of the neighbor, presumed that the information received was an anonymous tip. Defendants also do not dispute that these false statements were included in the affidavit presented to the judge, nor do they challenge that the false information was material to a finding of probable cause.

Plaintiffs, however, have not submitted evidence to establish that Officer Kantz included the false statements deliberately or knowingly. The issue then is whether Officer Kantz's false statements were made with a reckless disregard for the truth.

Plaintiffs assert that Officer Kantz displayed a reckless regard for the truth by: (1) not including in the search warrant affidavit the information provided to her by Officer Starzec in her voicemail; (2) failing to verify the Call for Service related to Mr. Lucaj's phone call; (3)

14

failing to run an address query for 9012 Continental, which would have revealed the Call for Service related to Plaintiffs' marijuana complaint; and (4) failing to notify the Taylor Special Operations Unit about her impending search warrant.

The most significant of Officer Kantz's errors is that she mistakenly believed the complainant to be Plaintiffs' neighbors, rather than Plaintiffs themselves. Officer Starzec incorrectly relayed this information via voice message to Officer Kantz. Officer Starzec testified that the department had been very busy and she had been receiving a lot of runs that day. She further testified that she believed she was giving Officer Kantz accurate information, and that it was her "intention to give her an accurate tip" and "give her accurate information." (Starzec Dep. at 96). Based upon this factual mixup, Officer Kantz and Detective Plemons investigated the property on August 20, 2009, and Detective Plemons observed the marijuana plants on Plaintiffs' property. Despite Plaintiffs claims to the contrary, the information contained in Kantz's affidavit, assuming it to be true, would have been sufficient to establish probable cause to obtain a search warrant.[3]

With regard to the errors by Officers Starzec and Kantz that lead to the issuance of the search warrant, there are no issues of fact. Plaintiffs do not explain how the officers' actions rise above mere negligence to constitute a reckless disregard for the truth. By all testimonial accounts, the actions by Officers Starzec and Kantz were simply mistakes. Officer Kantz was

---

[3]Plaintiffs focus on Officer Kantz's allegation in her affidavit that the information she relied on was phoned in by an "anonymous neighbor." Plaintiffs contend that, without the inclusion of this false statement, there would not have been probable cause to obtain a search warrant. This argument is without merit. Detective Plemons personally observed the tall marijuana plants on Plaintiffs' property. Detective Plemons' personal observations alone amount to probable cause. *See United States v. Popham*, 250 Fed.Appx. 170, 173 (6th Cir. 2007).

never provided the name of the caller who reported the marijuana complaint, and therefore presumed it had been an anonymous neighbor that called. Her actions were consistent with the mistaken facts given to her by Officer Starzec. The perception of truth of Officer Starzec's false information was only enhanced when Officer Kantz and Detective Plemons personally observed the marijuana plants on Plaintiffs' property.

Although Officer Kantz did not notify Taylor's Special Operations Unit of her application for a search warrant, she submitted a Michigan HIDTA Deconfliction Form to ensure that other agencies had not already investigated the address she intended search. This is not indicia of a reckless disregard for the truth. Considering the facts available to Officer Kantz, the Court finds that a reasonably competent officer, under the same circumstances, could have concluded that a warrant should issue. At best for Plaintiffs, reasonably prudent officers would disagree as to whether they would have proceeded in a similar manner as Officer Kantz. This is not sufficient to withhold immunity from an officer. Circumstances such as these are precisely why officers are entitled to qualified immunity. Qualified immunity exists to "acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

Accordingly, in viewing the evidence in a light most favorable to Plaintiffs, Officers Starzec and Kantz did not violate Plaintiffs' Fourth Amendment rights when Officer Kantz included false statements in her search warrant affidavit. The remaining Defendant Officers relied in good faith upon a judicially issued search warrant and their initial search of Plaintiffs' home was not clearly unlawful.

Because the Court finds that Plaintiffs have not established a constitutional violation with

respect to the initial search of the residence, the Court need not address the second prong of the qualified immunity test regarding this claim.

      B.    <u>Excessive Force and Continued Unreasonable Search:</u>

Plaintiffs also allege that the Officer Defendants are liable because "their actions and force used during the seizure, and detention/imprisonment of Megann Lucaj were excessive in light of the facts and circumstances that confronted the officers." (Pl. Resp. at 10). "Specifically, the Officers failed to act reasonably when they broke down Plaintiffs' front door, detained Megann Lucaj, and most importantly, failed to retreat once they learned that they had made a mistake." (*Id.*).

As stated above, Plaintiffs' Amended Complaint and response brief do not detail the conduct of each individual Defendant Officer with respect to many of the claims alleged. Again, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay*, 601 F.3d at 650. Generally, mere presence at the scene, without a showing of direct responsibility for the action, will not subject an officer to liability. *Id.*

      i.    <u>Viewing the Facts in the Light Most Favorable to Plaintiffs, Have Plaintiffs Established A Constitutional Violation as to Any of the Defendant Officers?</u>

          1.    <u>The Defendant Officers did not Participate in the Initial Entrance and Seizure of Mrs. Lucaj.</u>

"To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

In their motion, the Defendant Officers do not address the actual excessiveness of the

17

force used in initially executing the search warrant.  Instead, they state that none of the named

Defendant Officers participated in the alleged excessive force and therefore did not violate

Plaintiffs' constitutional right.  The Court agrees with the Defendant Officers that they are

entitled to qualified immunity on Plaintiffs' excessive force claims with respect to the officers'

initial entry into the home and initial seizure of Mrs. Lucaj.

       The testimony from each of the Defendant Officers establishes that Officers Starzec,

Corne, and Chicko did not participate in the forced entry of the home and did not enter the home

until Mrs. Lucaj had been secured by other, non-party officers.  Furthermore, Officer Kantz did

not directly engage or participate in the seizure of Mrs. Lucaj upon entry into the house.  (Kantz

Dep. at 139).  The undisputed testimony also establishes that none of these officers drew their

guns or made physical contact with Mrs. Lucaj.  In fact, at the hearing on this matter, Plaintiffs'

counsel agreed that the officer who pushed Mrs. Lucaj to the ground was not one of the

Defendant Officers.  Plaintiffs have not provided evidence that the Defendant Officers engaged

in any of the conduct that Plaintiffs consider to be excessive force.

       Additionally, there is no genuine issue of material fact that any the named Defendant

Officers supervised those officers who allegedly used excessive force.  Although it was Officer

Kantz who obtained the search warrant and prepared the raid plan, the uncontradicted testimony

is that Lt. Pizana supervised the raid team.  (Kantz Dep. at 136).  It was Lt. Pizana who reviewed

the raid plan prepared by Officer Kantz during the briefing.  (Incident Report, Pl. Br., Ex. B).

Additionally, Lt. Pizana is specifically listed as "Officer-In-Charge" on the raid plan.  (Raid

Plan, Pl. Br., Ex. E).  The uncontradicted testimonial evidence of the officers also establishes

that Lt. Pizana ordered the knock and announce (DeWeese Dep. at 55, 56) and ordered the forced

entry (Kantz Dep. at 134-35).

Viewing the evidence in a light most favorable to Plaintiffs, Plaintiffs' have failed to create a genuine issue of fact that each individual, named Defendant Officer engaged in excessive force. Defendant Officers therefore did not constitutionally violate Plaintiffs' right to be free from excessive force, and Defendant Officers are entitled to qualified immunity on Plaintiffs' excessive force claim.

     2.    <u>There is an Issue of Fact as to Whether the Continued Search by Officer Corne and Officer Starzec was Objectively Unreasonable.</u>

Plaintiffs also assert that Plaintiffs' rights were violated because the Defendant Officers failed to retreat upon learning that a mistake had been made in executing the search warrant. Plaintiffs' contend that the Defendant Officers' continued search of the home after speaking with Sgt. Neal constituted an unreasonable execution of the search warrant. Of the Defendant Officers, only Officer Corne's and Officer Starzec's actions have been specified in this regard.

Police officers have an obligation to retreat as soon as they know, or reasonably should know, that they have made a mistake in entering a home. *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995); *see also Maryland v. Garrison*, 480 U.S. 79 at n.14 (1987) ("It is only after the police begin to execute the warrant and set foot upon the described premises that they will discover the factual mistake and must reasonably limit their search accordingly."). The Sixth Circuit has stated:

> [A]s a legal matter, any search or seizure that occurred while the officers were under the mistaken but reasonable belief that they were in fact executing the warrant at the correct residence would be protected by qualified immunity. Conversely, any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity. A "reasonable" officer would know

19

that such warrantless searches and seizures would violate the plaintiffs' constitutional rights.

*Pray*, 49 F.3d at 1159 .

With respect to Officer Corne and Officer Starzec, the Court finds that Plaintiffs have created a genuine issue of material fact that the two officers continued to search Plaintiffs' home even after the Defendant Officers learned that a mistake had been made in obtaining the search warrant. Although Officer Kantz testified that the K-9 sweep occurred while she was on the phone with Sgt. Neal (Kantz Dep. at 144), Mrs. Lucaj testified that the K-9 sweep of the basement and master bedroom occurred after Officer Kantz ended her phone conversation with Sgt. Neal in which he notified Officer Kantz of the true circumstances surrounding the Call for Service. Additionally, Officer Corne testified that Officer Starzec assisted her with the K-9 search. (Corne Dep. at 35).

Viewing this evidence in light most favorable to Plaintiff, Officers Corne and Starzec continued their search of Plaintiffs' home despite learning that the officers made a mistake in obtaining and executing the searching warrant. The Court concludes that a reasonable officer would have known to end his or her search upon learning that Plaintiffs were, in fact, the complainants and that Sgt. Neal already removed the marijuana plants from Plaintiffs' home.

      ii.    <u>Was Plantiffs' Right to be Free From an Unreasonable Search Established at the Time of the Violation?</u>

Under the second step of the qualified immunity analysis, the Court must determine whether the right was clearly established at the time of the violation. Like the plaintiffs in *Pray*, the Plaintiffs in this case "have alleged that the police officers violated their Fourth Amendment

rights to be free from unreasonable searches and seizures and excessive force.  Both rights are clearly established rights of which a reasonable official would know."  *Id*. (*citing Graham v. Connor*, 490 U.S. 386, 392–93 (1989); *California v. Hodari*, 499 U.S. 621, 624–25 (1991)).

Accordingly, Defendant Officers Gina Starzec and Kristina Corne are not entitled to qualified immunity on Plaintiffs' Fourth Amendment claim relating to the continued search of Plaintiffs' home after the raid officers learned that they mistakenly obtained and executing the search warrant.

II.    Are Defendant Officers Entitled to Governmental Immunity as to Plaintiffs' State-Law Claims?

In addition to Plaintiffs' § 1983 claims, Plaintiffs allege the following state-law, intentional tort claims: false arrest and imprisonment, assault and battery, and intentional infliction of emotional distress.  Plaintiffs also allege gross negligence and loss of consortium. The Defendants Officers again assert that they are entitled to immunity.

A.    Defendant Officers are Entitled to Governmental Immunity With Respect to Plaintiffs' Intentional Tort Claims.

A police officer is immune to intentional tort allegations "if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken."  *Odom v. Wayne County*, 482 Mich. 459, 481 (2008).  "Thus, the proponent of individual immunity must establish that he acted without malice."  *Id*. at 475.

As discussed above, Officers Kantz honestly believed probable cause existed to obtain a warrant to search Plaintiffs' house.  Moreover, although Officers Starzec and Corne may have acted unreasonably in searching Plaintiffs' home after the officers learned of their mistake, Plaintiffs have not provided any evidence to establish that the Defendant Officers acted with

21

malice.  Accordingly, Defendant Officers are entitled to immunity with respect to the Plaintiffs'

state-law intentional tort claims.

      B.    <u>Defendant Officers are Entitled to Governmental Immunity With Respect to
Plaintiffs' Gross Negligence Claim and Loss of Consortium Claim.</u>

      Defendants also contend that they are entitled to immunity with respect to Plaintiffs'

gross negligence and loss of consortium claims.[4]  Although not addressed in their motion,

governmental immunity with respect to claims of negligence and loss of consortium are

governed by MCL § 691.1407(2), which provides:

> (2) Except as otherwise provided in this section, and without regard
> to the discretionary or ministerial nature of the conduct in question,
> each officer and employee of a governmental agency, each volunteer
> acting on behalf of a governmental agency, and each member of a
> board, council, commission, or statutorily created task force of a
> governmental agency is immune from tort liability for an injury to a
> person or damage to property caused by the officer, employee, or
> member while in the course of employment or service or caused by
> the volunteer while acting on behalf of a governmental agency if all
> of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or
> reasonably believes he or she is acting within the scope of his or her
> authority.
>
> (b) The governmental agency is engaged in the exercise or discharge
> of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does
> not amount to gross negligence that is the proximate cause of the
> injury or damage.

M.C.L. § 691.1407(2).  The statute further provides, "'Gross negligence' means conduct so

---

[4]The Michigan Supreme Court has stated, "Because governmental agencies are immune
from tort liability unless one of the statutory exceptions applies. . . governmental agencies are
not liable for loss of consortium."  *Wesche v. Mecosta County Road Com'n*, 480 Mich. 75, 87
n12 (2008).

reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(7)(a).

There is no question that Defendant Officers were acting within the scope of their authority and were engaging in the discharge of a governmental function. Furthermore, the only Defendant Officers that could have conceivably acted with gross negligence are Officers Starzec, Corne, and Kantz. As previously discussed, however, Plaintiffs have not created a genuine issue of fact that Officers Kantz and Starzec acted with a lack of concern as to whether an injury results with respect to Plaintiffs' false arrest or false imprisonment claims. Officer Kantz and Officer Starzec's actions in this respect cannot be described as anything more than a mistake or oversight. Officers Kantz and Starzec are entitled to qualified immunity for to their actions leading up to the initial seizure of Mrs. Lucaj.

Additionally, because Officers Starzec's and Corne's continued search of Plaintiffs' home is predicated on intentional conduct, Plaintiffs' gross negligence and loss of consortium claim arising out of the continued search must fail as a matter of law.

III.   Plaintiffs Have not Established Municipal Liability Against the City of Taylor.

In Count 7 of their Amended Complaint, Plaintiffs also allege a *Monell* claim against the City. Plaintiffs assert that the City's failure "to train its employees in the field of narcotics investigation, specifically search and seizures, has resulted in a custom of deliberate indifference to the constitutional rights of its citizens." (Pls' Resp. Br. at 15). Plaintiffs further contend that "this custom of deliberate indifference was the direct and proximate cause of the emotional and financial injury that Plaintiffs incurred." (*Id*. at 15-16).

Under *Monell*, "Local governing bodies. . . can be sued directly under § 1983 for

23

monetary, declaratory, or injunctive relief where. . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Later, in *City of Canton v. Harris*, 489 U.S. 378, the Supreme Court extended the scope of *Monell*, holding "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." In this case, Plaintiffs seek to hold the City liable for such a failure to train.

As stated above, only Plaintiffs' Fourth Amendment claim relating specifically to Officer Corne's and Officer Starzec's unreasonable, continued search of Plaintiffs' home remains. To establish liability against the City of Taylor, Plaintiff must show three elements: 1) that Officers Corne's or Officer Starzec's training was inadequate to prepare them for the tasks that officers in their position must perform; 2) that the inadequacy persisted due to the City's "deliberate indifference"; and 3) that the inadequacy is closely related to or actually caused Plaintiffs' injury. *Harvey v. Campbell County, Tenn.*, 453 Fed.App'x 557, 562 (6th Cir. 2011).

Plaintiffs claim the following:

> Specifically, the Defendant Officers violated the Fourth Amendment constitutional rights of Megann and Victor Lucaj when they, due to lack of training, completely disregarded their right to be free from unreasonable search and seizure. Acting recklessly and with deliberate indifference, Defendants practiced and permitted search and seizure policies which resulted in and were the moving force behind these violations.

(Pl. Resp. at 16).

In this case, Plaintiffs have only submitted evidence that Officer Starzec did not receive

24

training on executing search warrants.  (*See* Starzec Dep. at 15).  Plaintiffs, however, have not

provided any evidence that Officer Corne and Officer Starzec's inadequacy persisted due to the

City's deliberate indifference.  "'[D]eliberate indifference' is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his

action."  As the City points out, "[A] plaintiff ordinarily cannot show that a municipality acted

with deliberate indifference without showing that the municipality was aware of prior

unconstitutional actions of its employees and failed to respond."  *Stemler v. City of Florence*,

126 F.3d 856, 866 (6th Cir. 1997).  In other words, Plaintiffs must identify prior instances of

Fourth Amendment violations with respect to the execution of a search warrant, and that the City

was aware of their officers' inadequacies in executing search warrants.  Plaintiffs have not

introduced any such evidence.  Accordingly, Plaintiff cannot establish municipal liability against

the City.

CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for

Summary Judgment (Doc. Entry No. 28) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion is **GRANTED** as to all Plaintiffs' claims, with the exception of

Plaintiffs' Fourth Amendment Claim relating specifically to an unreasonable, continued search

of Plaintiffs' home.

Thus, the only remaining claim in this action is a Fourth Amendment claim against

Officer Kristina Corne and Officer Gina Starzec for an unreasonable, continued search of

Plaintiffs' home after the officers learned that they had made a mistake in obtaining and

executing the search warrant.

**IT IS FURTHER ORDERED** that the City of Taylor, Meggan Kantz, and Anthony Chicko are **DISMISSED** as Defendants in this action.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 28, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 28, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

26